SIGMUND ULLMAN COMPANY, Respondent, *v.* J. L. MOTT IRON WORKS, Appellant.

First Department, May 2, 1919.

Sale — action for breach of contract — extension of time by demanding delivery after contract date — failure of plaintiff to subsequently put defendant in default — action for breach of contract to manufacture kettle " to be tested to 100 pounds "— finding that kettle was not so tested against weight of evidence.

Where in an action for the breach of a contract to manufacture and sell a certain article, the testimony of a witness of the defendant is uncontradicted that the plaintiff called for the delivery of the article long after the date on which it should have been delivered, thereby extending the time for a reasonable period, and there is no testimony that at any time thereafter the plaintiff put the defendant in default, a judgment in favor of the plaintiff must be reversed and a new trial granted.

In an action for the breach of a contract by the defendant to manufacture and sell to the plaintiff an iron kettle in conformity with certain specifications furnished by the plaintiff, said kettle " to be tested to 100 lbs. Hydraulic test," it appeared that the first day the kettle was put into use it exploded, although the pressure just prior to the explosion did not exceed 85 pounds. The defendant claimed and introduced evidence to show that the kettle had been tested before delivery by steam pressure to 112 pounds and by hydraulic pressure to 110 pounds. Evidence examined, and

*Held,* that a finding that the kettle was not tested as required by the contract is against the weight of the evidence, and that a judgment in favor of the plaintiff should be reversed and a new trial granted.

APPEAL by the defendant, J. L. Mott Iron Works, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on

First Department, May, 1919.    [Vol. 187.

the 12th day of June, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Dudley .E. Latham,* for the appellant.

*Arthur B. Hyman* of counsel [*Paskus, Gordon & Hyman,* attorneys], for the respondent.

SHEARN, J.:

Appeal by defendant from a judgment entered on the verdict of a jury upon a complaint alleging two breaches of contract.

The first contract was in writing and therein the plaintiff agreed to purchase from the defendant for the sum of $1,197 a steam jacketed iron kettle of certain size and dimensions and in conformity with certain specifications furnished by the plaintiff to the defendant, " Delivery three to five weeks barring labor troubles." The contract contained this provision, " Kettle to be tested to 100 lbs. Hydraulic test."

A second and precisely similar contract for another kettle was made on February 7, 1917, the price being $1,160, delivery to be within four weeks.

The purchaser not only prescribed the dimensions, etc., but selected a style of kettle from a plate in defendant's catalogue. The purchaser was engaged in manufacturing inks and the use to which it intended to put the kettle, which was huge in size and had to have elaborate concrete, brick and other foundations, was that of boiling varnish. The kettle may be compared in a way to a huge chafing dish, the boiler part being surrounded by a jacket, steam being introduced in the space between the jacket and the bottom of the boiler, thus producing heat to boil the varnish which was placed in the boiler or kettle. The purchaser attended to the setting and completion of the foundations. The kettles had to be specially manufactured and the work was done in the factory of defendant's subcontractor, the Gibson Iron Works. There was long delay in getting out the first kettle owing to labor troubles, but it was finally delivered in May, 1917, and was installed by a contractor, employed by the purchaser, who,

after finishing the installation, made a pressure test, applying all the pressure that plaintiff's boiler carried, to wit, 80 to 85 pounds, and the kettle stood the test. It was testified to by Frankenheim, the superintendent of the Gibson Iron Works, that before delivering the kettle he tested it by steam pressure to 112 pounds and then made another test, giving it 110 pounds hydraulic pressure. Of course the amount of pressure is the same whether steam or hydraulic, the only difference being that there is no danger of an explosion when employing the hydraulic test. The first day the kettle was put into use it exploded with such force that the entire bottom of the kettle was blown out, some pieces weighing as much as 200 or 300 pounds being precipitated up through the kettle and 50 or 60 feet distant. The explosion happened during the luncheon hour when there was no one around. The testimony, however, is that just before the explosion the boiler gauge was examined and the pressure did not exceed 85 pounds. The explosion took place on June thirteenth and on the fourteenth the plaintiff communicated by letter with the defendant advising it of the fact that the kettle had exploded and that an examination of the fragments proved that the accident was caused by defective material. The only evidence of defective material is that a blow hole was found in one of the fragments. The defendant disclaimed responsibility and counterclaims for the purchase price.

The second kettle was due in March but it had not been delivered up to the time of the explosion. The testimony of defendant's witness Horne is uncontradicted that the plaintiff called on the defendant for delivery of the second kettle after the delivery of the first kettle, which is long after the date on which it should have been delivered. There is no testimony that at any time thereafter the plaintiff put the defendant in default. There is testimony that after the explosion the plaintiff notified the defendant that it did not want the second kettle, which testimony is denied by the plaintiff. The court first directed a verdict in favor of the plaintiff on the second cause of action but afterwards, at the request of plaintiff's counsel, withdrew this direction and submitted this question to the jury in a charge that was practically tantamount to an instruction that plaintiff was entitled to

First Department, May, 1919.    [Vol. 187.

recover.   No reference was made by the learned trial justice to a conflict in the testimony with respect to the purchaser's saying, after the explosion, that it did not want the kettle, but further than this it is entirely clear that under the evidence plaintiff was not entitled to succeed on the second cause of action as the evidence stood, for it had never put the defendant in default, having extended the time to a reasonable time by virtue of calling for delivery after the due date.   The judgment will, therefore, have to be reversed and a new trial ordered on the second cause of action.

The main conflict on the trial centered about the first cause of action.   The plaintiff insists that, notwithstanding the testimony of the Gibson superintendent, the kettle was not tested as required by the contract.   Gibson's superintendent had such an interest in testifying that he did make the test as to make his credibility a matter for the jury.   As tending to show that there was no test, the plaintiff relies first upon the fact that the explosion occurred under eighty-five pounds pressure and under conditions showing that the steam had been properly let into the jacket.   The defendant claims and introduced testimony to show that it does not follow at all that a vessel which has withstood a hundred pounds test will not explode when subjected to what is called a working pressure of eighty to eighty-five pounds.   It claims that the working pressure should certainly not be over half the test pressure, as there is much greater strain when the pressure is long continued, as under working conditions.   Whether this is so was for the jury to determine.   The second point relied upon to show that the kettle had not been tested was scientific testimony to the effect that a flat bottom kettle such as this, the bottom of which was no thicker than proved, would not stand a pressure of more than fourteen pounds.   This scientific testimony, however, is practically worthless in view of the uncontradicted fact that when this kettle was first tested by an independent contractor, who set it up for the plaintiff, it withstood eighty to eighty-five pounds pressure and it was under that pressure long before the explosion.   Much complaint is made by the defendant of the fact that the court received this testimony about the shape of the kettle, and received testimony that a kettle with a conical bottom would much better

withstand pressure. The basis of the assigned error is the fact that the kettle was manufactured according to a design selected by the purchaser. There is considerable ground for this complaint, for the jury may well have been misled by this line of testimony, although technically there was no error because the court ruled repeatedly that the defendant was not responsible for the shape, and it further appears that the testimony came into the case first in answer to questions put by the defendant's counsel on cross-examination and was thereafter repeated without objection. There is no sufficient evidence that the explosion was caused by defective material and the question arises, therefore, whether the verdict, which imports that the kettle was not tested to one hundred pounds, is against the weight of the evidence, as claimed by the appellant. It will at once occur to one that there is some difficulty about the significance of wording of the contract with respect to the test, *i. e.*, whether it means that the seller would perform its obligation by manufacturing a kettle which had successfully withstood an actual test made by it up to one hundred pounds or whether it means that the kettle was to be so built as to be capable of withstanding for a reasonable time a pressure of one hundred pounds. The court charged the jury that all it meant was that the kettle had prior to delivery successfully been tested at one hundred pounds. That is the law of the case on this appeal. I think this was correct too, in view of the peculiar language " to be tested to 100 lbs." and especially as it appears from the papers on the accompanying appeal from an order denying a new trial, on the ground of newly-discovered evidence (188 App. Div. 913), that this clause in the contract was the wording employed by the plaintiff. The conflict on the issue of a test really narrows down to the fact of an explosion at eighty to eighty-five pounds pressure, on the one hand, against the unimpeached testimony of the superintendent of the Gibson Iron Works that he made two tests before delivery and the indisputable fact that the kettle did withstand a test in plaintiff's premises of eighty to eighty-five pounds and was working on the morning of the explosion at the same pressure for a long time before exploding. We are of the opinion that the finding that the kettle was not tested as required is decidedly against the weight of the evidence. Considering the evidence in its

entirety, it strongly tends to show that the explosion was caused by subjecting the kettle to an excessive working pressure, which was very nearly up to the maximum pressure that the kettle was built to stand on preliminary test.

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.